UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
DUQUAN FAULK,

                     Plaintiff,

            - against -

DR. VINCENT GERACI, *S.C.C.F. Medical Director*,

                    Defendant.
------------------------------------------------------------x

                                      **MEMORANDUM & ORDER**
                                   19-CV-5690 (PKC) (VMS)

PAMELA K. CHEN, United States District Judge:

    Plaintiff DuQuan Faulk, who is currently a pretrial detainee at the Suffolk County Correctional Facility ("SCCF"), brings this action *pro se*, alleging that Defendant Dr. Vincent Geraci, an SCCF medical director, was deliberately indifferent to his serious medical need by cancelling a scheduled knee surgery and failing to reschedule it. Currently before the Court is Defendant's unopposed motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. For the reasons explained below, the motion is granted and this case is terminated.

## BACKGROUND

### I.    Factual Background[1]

    Sometime between December 2018 and February 2019, Plaintiff injured his knee while

---

[1] Because *pro se* Plaintiff has filed no opposition papers, the Court reviews the record in its entirety. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) ("[W]hile a court is not required to consider what the parties fail to point out in their Local Rule 56.1 statements, it may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement." (internal quotation marks omitted)). The facts are drawn from the Court's own review of the record as a whole, with a focus on Plaintiff's own deposition testimony, and the Court draws all reasonable inferences and resolves all ambiguities in favor of Plaintiff, the non-moving party. *See Horror Inc. v. Miller*, 15 F.4th 232, 240 (2d Cir. 2021).

playing basketball at SCCF's Yaphank facility.[2]   (Sept. 3, 2020 Deposition of DuQuan Faulk ("Tr."), Dkt. 34-13, at 56–59; Complaint ("Compl."), Dkt. 1, at 3.)  Plaintiff jumped for a rebound and, upon leaping, heard something pop.  (Tr., Dkt. 34-13, at 59.)  When he landed, his foot tore through the sidewall of his shoe, and his knee "popped back in place," causing a piece of cartilage to start floating around in his knee.  (*Id.* at 37, 59–60.)  Plaintiff reported his injury and, shortly thereafter,[3] was taken to the medical unit.  (*Id.* at 64.)  Nurse Practitioner ("NP") Alice Butkos examined Plaintiff and sent him out for an x-ray.  (*Id.* at 65, 69.)  The x-ray did not reveal anything, so Plaintiff was sent for an MRI approximately a week-and-a-half later.  (*Id.* at 65.)  After the MRI results came back, medical staff met with Plaintiff to explain the findings, which indicated that his cartilage was damaged.  (Plaintiff's SCCF Med. Recs, Dkt. 35-1, at ECF 380.[4])  Plaintiff was offered crutches, but he declined.  (Tr., Dkt. 34-13, at 66.)  Plaintiff was, however, given a knee sleeve,[5] which "was really helping" until Corrections Officers removed the metal braces from the sleeve and then "it didn't help at all."  (*Id.* at 73–74.)

After a review of his MRI by SCCF medical staff, Plaintiff was sent for an orthopedic consultation at Stony Brook Orthopedics, and surgery was scheduled for July 10, 2019.  (*Id.* at 66,

---

[2] The SCCF comprises two correctional facilities, one in Yaphank and one in Riverhead. *See Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 56 (2d Cir. 2015); *Butler v. Suffolk Cty.*, No. 11-CV-2602 (JS) (GRB), 2016 WL 11480705, at *1 (E.D.N.Y. June 15, 2016), *report and recommendation adopted sub nom.*, *Lynch v. Suffolk Cty.*, 2016 WL 4508343 (E.D.N.Y. Aug. 29, 2016).

[3] Plaintiff believes that he was seen either the same day or the following day.  (Tr., Dkt. 34-13, at 64.)  Medical records indicate that it was approximately two weeks after the injury.  (*Id.* at 69.)

[4] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[5] A knee sleeve is a device worn to help stabilize the knee.  *Thomas v. Astrue*, No. 11-CV-1625 (MPS), 2013 WL 4746371, at *18 (D. Conn. Sept. 4, 2013).

81; Compl. Dkt. 1, at 4.)  A day before the scheduled surgery, however, it was cancelled.  (Tr.,
Dkt. 34-13, at 66–67; Affidavit of Sabrina Griffin ("Griffin Aff."), Dkt. 35-2, ¶ 2.)  As Plaintiff
would later learn, the surgery was cancelled by Stony Brook Orthopedics because the doctor
scheduled to perform the surgery was unavailable.  (Tr., Dkt. 34-13, at 67; Griffin Aff., Dkt. 35-2,
¶ 2.)

Shortly after the surgery was cancelled, Plaintiff was transferred to SCCF's Riverhead
facility, where Defendant Dr. Geraci worked.  (Tr., Dkt. 34-13, at 67, 88, 96.)  At Riverhead,
Plaintiff was given a new knee sleeve.  (*Id.* at 75.)  After reaching out to the medical unit once in
August or September 2019 about his cancelled surgery, and not being brought down to medical,
Plaintiff drafted and signed the Complaint in this case on September 30, 2019.  (*See id.* at 90.)
After mailing the Complaint, however, Plaintiff was brought back to Stony Brook Orthopedics,
and his surgery was rescheduled for a date in April 2020.  (*Id.* at 101.)  Before then, the COVID-
19 pandemic hit, and Plaintiff's surgery was cancelled as a result.  (*Id.* at 101, 111.)

In August 2020, however, Plaintiff was again able to see an outside medical provider.[6]  (*Id.*
at 104.)  Plaintiff was told that the cartilage in his knee was "in a pretty decent place inside his
leg" and thus surgery was no longer being recommended.  (*Id.* at 111.)  Instead, physical therapy
was recommended and, as of September 2020, Plaintiff's knee was feeling "okay," but not "100
percent."  (*Id.* at 112, 104.)  At his September 3, 2020 deposition in this case, Plaintiff was asked
if he was satisfied with the medical care he had received from Defendant Geraci.  (*Id.* at 103–04.)
Plaintiff replied:

> The way that he has handled my knee situation, and as far as getting me to outside
> medical and treatment for my knee and getting me what I need, as far as going

---

[6] Because all of the medical records submitted with the present motion predate this visit, it
is not clear if he was seen by Stony Brook Orthopedics or another provider.

inside of the jail, as far as making my knee comfortable, he has done a great job.

(*Id.* at 104.)  Plaintiff explained that the reason he filed this lawsuit was because he felt that, when his surgery was cancelled in July 2019, he should have been told why it was cancelled, and it should have been rescheduled.  (*Id.* at 110.)

## II.    Procedural History

Plaintiff's Complaint was docketed with the Court on October 7, 2019.  (Compl., Dkt. 1.) Plaintiff initially sued Dr. Geraci and also SCCF itself.  (*Id.* at 1.)  On October 11, 2019, the Court *sua sponte* dismissed SCCF, but allowed the claim against Dr. Geraci to proceed.  (Memorandum & Order, Dkt. 7.)  Discovery closed on December 16, 2020.  (12/16/2020 Docket Order.)  On May 19, 2021, Defendant Dr. Geraci moved for summary judgment.  (Dkt. 34.)  Along with his motion and memorandum of law, Defendant Dr. Geraci submitted Plaintiff's relevant medical records, affidavits from medical staff at SCCF, and a transcript of Plaintiff's deposition.  (*See* Dkts. 34, 35, 37.)  Plaintiff failed to oppose by the deadline set in this Court's briefing schedule, so the Court *sua sponte* extended the time for Plaintiff to submit opposition papers.  (05/26/2021 Docket Order.) Plaintiff, however, never filed an opposition or otherwise reached out to the Court about the present motion.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (noting that the summary judgment inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  The moving party bears the initial burden of "establishing the

4

absence of any genuine issue of material fact." *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).   Once this initial burden is met, the nonmoving party must put forward "sufficient evidence to allow a reasonable jury to find in its favor." *Spinelli v. City of New York*, 579 F.3d 160, 166–67 (2d Cir. 2009) (internal quotation marks omitted); *see also Celotex*, 477 U.S. at 322–23.   Even where a motion for summary judgment is unopposed, like here, the court must still "examin[e] the moving party's submission to determine if [he] has met [his] burden of demonstrating that no material issue of fact remains for trial," and that he "is entitled to judgment as a matter of law." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *accord Amaker v. Foley*, 274 F.3d 677, 680–81 (2d Cir. 2001).   Furthermore, the Court is mindful that, when considering a dispositive motion made against a *pro se* litigant, the *pro se* party's pleadings must be "liberally construed" in favor of that party and held to "less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks omitted).

## DISCUSSION

### I.      Legal Standard – Deliberate Indifference

Because Plaintiff was—at all relevant times—a pretrial detainee, his deliberate indifference claim is governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishment Clause of the Eighth Amendment.   *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).   Establishing a claim of deliberate indifference to serious medical need under the Due Process Clause requires satisfying a two-prong test.   The first prong, the "objective" prong, examines whether "the alleged deprivation of adequate medical care [was] 'sufficiently serious.'" *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006)).   The second prong, the "mental element" prong,

considers whether the defendant "acted with at least deliberate indifference." *Darnell*, 849 F.3d at 29.

Under the first prong, a sufficiently serious medical need is "'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)); *see also Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) ("A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" (quoting *Chance*, 143 F.3d at 702)). This objective inquiry is "contextual and fact-specific" and "must be tailored to the specific circumstances of each case." *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (internal quotation marks omitted).

The second prong requires showing that the defendant "acted with a sufficiently culpable state of mind"—that is, with at least "deliberate indifference." *Grimmett v. Corizon Med. Assocs. of N.Y.*, No. 15-CV-7351 (JPO) (SN), 2017 WL 2274485, at *4 (S.D.N.Y. May 24, 2017); *see also Darnell*, 849 F.3d at 29. Unlike under the Eighth Amendment, deliberate indifference under the Fourteenth Amendment may be defined objectively, not only subjectively. *See Gleeson v. County of Nassau*, No. 15-CV-6487 (AMD) (RL), 2019 WL 4754326, at *11 (E.D.N.Y. Sept. 30, 2019) (collecting cases). In other words, a pretrial detainee "need not demonstrate subjective awareness on the part of the [defendant]." *Id.* "[R]ather than ask whether the charged official 'knew of and disregarded an excessive risk to inmate health or safety,' courts are to instead determine whether the official 'knew, or should have known' that his or her conduct 'posed an excessive risk to health or safety.'" *Lloyd v. City of New York*, 246 F. Supp. 3d 704, 719 (S.D.N.Y. 2017) (quoting *Darnell*, 849 F.3d at 33, 35). This does not mean that mere negligence will suffice; a pretrial detainee "must prove that an official acted intentionally or recklessly, and not merely negligently." *Darnell*, 849

F.3d at 36.  Moreover, it is well-established that "mere medical malpractice is not tantamount to deliberate indifference." *Charles v. Orange Cty.*, 925 F.3d 73, 87 (2d Cir. 2019) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 107 (2d Cir. 2000)).  Thus, for example, a short delay in an inmate receiving medical treatment, in itself, does not evince deliberate indifference on the part of prison officials.  *See Williams v. City of N.Y. Dep't of Corr.*, No. 19-CV-9528 (ER), 2020 WL 3893929, at *6 (S.D.N.Y. July 10, 2020) (collecting cases).  Moreover, "a prisoner's disagreement with the treatment he or she received 'is not, without more, sufficient to state a constitutional claim.'"  *Id.* (quoting *Rivera v. Doe*, No. 16-CV-8809 (PAE) (BCM), 2018 WL 1449538, at *11 (S.D.N.Y. Feb. 26, 2018)).

## II.     Defendant is Entitled to Summary Judgment

Even drawing all reasonable inferences and resolving all ambiguities in favor of Plaintiff, *see Horror Inc. v. Miller*, 15 F.4th 232, 240 (2d Cir. 2021), no reasonable juror could conclude that Defendant Dr. Geraci—or anyone at SCCF—was deliberately indifferent to Plaintiff's serious medical need,[7] *Anderson*, 477 U.S. at 248.  Plaintiff's own deposition testimony completely forecloses any other conclusion.  Plaintiff's testimony reveals that, upon injuring his knee, he received prompt, appropriate, and ongoing treatment, from both SCCF medical staff and outside medical consultants.

Shortly after his injury, SCCF sent him out for an x-ray.  (Tr., Dkt. 34-13, at 65.)  When that was inconclusive, he was sent out for an MRI.  (*Id.*)  When the MRI revealed a problem, Plaintiff was scheduled for surgery, which is exactly what the outside orthopedist called for.  (*See id.* at 66; Compl. Dkt. 1, at 4.)  In the meantime, SCCF offered him crutches and provided him

---

[7] For the purposes of this opinion, the Court assumes without deciding that Plaintiff's injury qualifies as a serious medical need.

with a brace. (Tr., Dkt. 34-13, at 66, 73–74.) Unfortunately, Plaintiff's surgery was cancelled due to a scheduling conflict. (*Id.* at 67; *see also* Griffin Aff., Dkt. 35-2, ¶ 2.) That is the point at which Plaintiff filed this lawsuit, and it is understandable that he was upset because the surgery was cancelled, he did not understand why, and—at the time of the cancellation—it was apparently not rescheduled. (*See* Tr., Dkt. 34-13, at 110.) The surgery was, however, rescheduled within a reasonable amount of time after that, and was cancelled a second time only because of the COVID-19 pandemic. (*Id.* at 101, 111.) During that time, Plaintiff received regular care, which Plaintiff described as "great," from SCCF medical staff, including Defendant Dr. Geraci. (*Id.* at 103–04.) SCCF provided Plaintiff with a new brace and was even able to get him to an outside medical consultant during the pandemic. (*See id.* at 75, 104.) As of August 2020, that outside medical consultant found that Plaintiff no longer needed surgery and should instead pursue physical therapy. (*Id.* at 111–12.)

There is simply no way to construe the undisputed facts in this case as possibly establishing deliberate indifference to a serious medical need under the Fourteenth Amendment.[8] Accordingly, Defendant's Rule 56 motion for summary judgment must be granted, and Plaintiff's case must be dismissed in its entirety.

## CONCLUSION

For the reasons explained above, Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is granted and Plaintiff's case is dismissed in its

---

[8] Because of the Court's conclusion that no constitutional violation occurred, the Court need not reach Defendant Dr. Geraci's argument that he was not personally involved in any alleged constitutional violation. In addition, because the Court does not construe Plaintiff's Complaint as stating any state law claims, the Court need not address Defendant's argument that any such claims would be barred because Plaintiff failed to file a notice of claim as required by state law.

entirety.  The Clerk of Court is respectfully requested to enter judgment accordingly and close this case.

SO ORDERED.

_/s/ Pamela K. Chen_
Pamela K. Chen
United States District Judge

Dated: March 28, 2022
        Brooklyn, New York